Donald NEWCOMBE, Plaintiff–
Appellant,

v.

ADOLF COORS COMPANY; Foote,
Cone and Belding; and Time,
Inc., Defendants–Appellees.

No. 95–55688.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1997.

Decided Sept. 22, 1998.

Joseph J. Iacopino, Pacific Palisades, CA, for plaintiff-appellant.

Henry L. Mason, III, Sidley & Austin, Chicago, IL; James M. Harris, Sidley & Aus-

tin, Los Angeles, CA, for defendants-appellees.

Before: HUG, Chief Judge,
FERNANDEZ and RYMER, Circuit
Judges.

HUG, Chief Judge.

Donald Newcombe, a former major league baseball all-star appeals the district court's order denying his motion to remand to state court due to lack of diversity, and the grant of summary judgment in favor of the defendants on all claims of various torts arising from the publication of a beer advertisement allegedly bearing his likeness. In this diversity action, Newcombe contends that his likeness and identity were used without his permission in an advertisement for Killian's Irish Red Beer, and that this violated California's statutory and common law protections against commercial misappropriation. Newcombe also contends that the advertisement was negligently created, that the defendants intentionally inflicted emotional distress upon him and that because he is a known recovering alcoholic, using his likeness in a beer advertisement was defamatory. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse in part.

## FACTS AND PROCEDURAL BACKGROUND

Newcombe is a former major league baseball all-star who pitched for the Brooklyn Dodgers and other teams from 1949 until 1960. He had previously starred in the so-called Negro leagues and was one of the first African–American players to play in the major leagues after Jackie Robinson broke the color barrier in 1947. Newcombe is the only player in major league history to have won the Most Valuable Player Award, the Cy Young Award, and the Rookie of the Year Award. He was a four-time member of the National League All Star Team, he batted over .300 in four different seasons, and had the most wins of any pitcher in the National League in 1950, 1951, 1955, and 1956.

Newcombe's baseball career was cut short due to his service in the Army and a personal battle with alcohol. He is a recovering alcoholic and he has devoted a substantial amount of time using his fame to advocate the dangers of alcohol, including serving as a spokesperson for the National Institute on Drug and Alcohol Abuse pursuant to presidential appointments by Richard Nixon, Gerald Ford and Ronald Reagan. He is currently the Director of Community Relations with the Los Angeles Dodgers, where he continues an active role in fighting alcohol abuse.

Killian's Irish Red Beer, owned by Coors Brewing Co., published an advertisement in the February 1994 *Sports Illustrated* "swimsuit edition" that featured a drawing of an old-time baseball game. The drawing was on the left half of the full-page advertisement while the right half was filled with text and a picture of a glass of beer. The baseball scene focused on a pitcher in the windup position and the background included a single infielder and an old-fashioned outfield fence. The players' uniforms did not depict an actual team, and the background did not depict an actual stadium. However, Newcombe, along with family, friends and former teammates, immediately recognized the pitcher featured in the advertisement as Newcombe in his playing days.

Newcombe filed suit in California state court on March 10, 1994, alleging that his identity had been misappropriated in violation of California statutory and common law, that the advertisement was defamatory because it portrayed him—a recovering alcoholic—as endorsing beer, that the advertisement was negligently created, and that the defendants intentionally inflicted emotional distress upon him. He sought to enjoin the advertisement from future publication, and he asked for $100,000,000 in damages. In his complaint, Newcombe named Coors, Foote Cone & Belding Advertising ("Belding") (the creator of the ad) and Time Inc. (the publisher of *Sports Illustrated* ) as defendants ("the defendants"), and included 100 "Doe" defendants—those who were "responsible in some

manner for the events and happenings" referred to in the complaint. The defendants invoked diversity jurisdiction and removed this action to federal court on April 8, 1994.

While denying that the pitcher in the advertisement was a "likeness" of Newcombe, Coors admitted that the drawing in the color advertisement was based on a newspaper photograph of Newcombe pitching in the 1949 World Series. The drawing and the newspaper photograph are virtually identical, as though the black and white newspaper photo had been traced and colored in. The only major differences between the newspaper photograph of Newcombe and the drawing of him are that the pitcher's uniform number has been changed from "36" to "39," and the bill of the hat in the drawing is a different color from the rest of the hat. Otherwise, the drawing in the advertisement appears to be an exact replica of the newspaper photograph of Newcombe.

Prior to filing this lawsuit, Newcombe allegedly made repeated requests of the defendants to divulge the identity of the artist who drew the scene portrayed in the advertisement—the name "Cassidy" was signed at the bottom of the advertisement—so that the artist could be named as a defendant, but the defendants honored the artist's request not to have his name disclosed and did not divulge this information. During discovery—the first time the defendants were legally obligated to disclose information about the artist—they informed Newcombe that the artist's full name was Michael Cassidy and that he lived in Del Mar, California.

Immediately after learning that Cassidy was a resident of California, Newcombe filed a motion on August 29, 1994, to have the case remanded to state court because Newcombe is also a California resident, thus destroying diversity. The district court denied the motion after finding that Cassidy need not be joined as a defendant because he was neither a necessary nor indispensable party under Fed.R.Civ.P. 19. Six months later, the district court granted summary judgment in

favor of the defendants on all claims. Newcombe now appeals.

## DISCUSSION

### I. Remand

■ Newcombe first argues that remand to state court is necessary because removal was improper in the first instance. We review the propriety of removal *de novo* because it is a question of federal subject matter jurisdiction. *Kruse v. State of Hawaii*, 68 F.3d 331, 333 (9th Cir.1995).

■ At the time the defendants sought to remove this action to federal court, there was complete diversity among the parties and the matter in controversy was in excess of $50,-000, thus meeting the requirements for removal. *See* 28 U.S.C. § 1332(a); 28 U.S.C. § 1441(a).[1] Newcombe contends that there was not complete diversity because the defendants were aware that he intended to add Cassidy as a defendant and that Cassidy's presence would destroy diversity. Because the defendants concealed Cassidy's identity until after they removed this action to federal court, Newcombe argues, the defendants misrepresented to the court that there was complete diversity when in fact there was not. Newcombe's claim must fail.

First, 28 U.S.C. § 1441(a) explicitly provides that the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal. As such, the district court was correct in only considering the domicile of the named defendants. Second, the defendants were under no legal obligation to disclose the artist's identity prior to discovery. Therefore, we cannot agree with Newcombe that the defendants improperly concealed Cassidy's identity. Furthermore, equity does not require the result requested by Newcombe. There is no indication that Newcombe attempted to independently ascertain the identity of the artist prior to filing this lawsuit, and even if he did, there is no indication that the defendants attempted to thwart these efforts. Newcombe filed this suit knowing that there

---

1. The amount in controversy requirement has subsequently been increased to $75,000. 28 U.S.C. § 1441(a) (as amended Oct. 19, 1996,

Pub.L. 104–317, Title II, § 205(a), 110 Stat. 3850).

was complete diversity among the named defendants and that removal was a real possibility. Newcombe could have foreclosed the possibility of removal by delaying filing suit until he could add a non-diverse defendant; he chose not to do so and instead filed suit less than a month after first viewing the ad. Because the defendants did not act improperly and because the statutory requirements for removal were met, removal was proper.

■ Newcombe also argues that the district court should have granted his motion to remand this action to state court once Cassidy's identity and domicile were divulged because Cassidy's presence destroyed diversity of citizenship.[2] The district court denied the motion to remand after determining that under Fed.R.Civ.P. 19, Cassidy was neither a necessary nor indispensable party. For the reasons articulated below, we review for an abuse of discretion the district court's decision not to allow joinder of a party that would destroy diversity.

■ Once removal has occurred, the district court has two options in dealing with an attempt to join a non-diverse party. 28 U.S.C. § 1447(e) provides that

[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

The language of § 1447(e) is couched in permissive terms and it clearly gives the district court the discretion to deny joinder. Because the decision regarding joinder of a diversity destroying-defendant is left to the discretion of the district court, we may only review the district court's decision for an abuse of discretion.

The district court considered the potential prejudice to Newcombe, balanced the equities, and determined that no injustice would occur. The district court, after stating that it was aware of its discretion under § 1447(e), concluded that Cassidy was not a

crucial defendant in this case because Newcombe only sought (1) an injunction, which could only be enforced against the other defendants, and (2) money damages, which could be fully satisfied by the other defendants. In addition, the district court concluded that Newcombe would not suffer undue prejudice due to Cassidy's absence as a party because he could subpoena Cassidy to testify at trial, and if he so chose, he could still proceed separately against Cassidy in state court. We agree with these conclusions and therefore conclude that the district court did not abuse its discretion in denying Newcombe's motion to remand.

## II. Substantive Claims

Turning to Newcombe's substantive claims, we review the grant of summary judgment *de novo. Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* We may not weigh the evidence or determine the truth of the matter before us; we may only determine whether there is a genuine issue of material fact for trial. *Abdul–Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir.1996).

## A. Cal. Civ.Code § 3344 and Common Law Misappropriation

■ Newcombe contends that the defendants violated his right of privacy and used his likeness and identity to their commercial advantage in violation of his statutory rights under Cal. Civ.Code § 3344 and common law right of privacy. California has long recognized a common law right of privacy for the protection of a person's name and likeness against appropriation by others for their advantage. *Eastwood v. Superior Court of Los Angeles County*, 149 Cal.App.3d 409, 416, 198 Cal.Rptr. 342 (1983). This California com-

---

**2.** Newcombe did not move to amend his complaint to include Cassidy as a defendant prior to his motion to remand. The district court noted that the proper procedure would have been to first add Cassidy as a defendant and then file a

motion for remand. However, the district court determined that this error was meaningless because the motion to add Cassidy as a defendant would have been denied because Cassidy was not a necessary and indispensable party.

mon law cause of action has been complemented by the enactment of Cal. Civ.Code § 3344. That section neither replaces nor codifies the common law cause of action. Section 3344(g) specifically provides that the statutory remedies of the section are cumulative and in addition to any others provided by law.

■ To sustain a common law cause of action for commercial misappropriation, a plaintiff must prove: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Eastwood,* 149 Cal.App.3d at 417, 198 Cal. Rptr. 342.

■ Cal. Civ.Code § 3344 provides in relevant part, "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner ... for purposes of advertising ... without such person's prior consent ... shall be liable for any damages sustained by the person." Cal. Civ. Code § 3344(a). Section 3344, unlike a common law claim, thus requires a plaintiff to establish: (1) a "knowing" use; (2) for purposes of advertising, and (3) a direct connection between the use and the commercial purpose. *Id.* at 417–18, 198 Cal.Rptr. 342.

In assessing whether summary judgment against Newcombe was appropriate with respect to both his common law and statutory claims, we must first decide whether Newcombe's likeness was actually used. Necessarily, we must address how identifiable an image must be to constitute a likeness under the common law and section 3344.[3] Neither the common law nor section 3344 indicate to whom or to what degree the plaintiff must be identifiable from the alleged likeness.

■ We find a useful definition in section 3344 itself. Section 3344(b) states that a photograph must be "readily identifiable" as the plaintiff in order for the plaintiff to prevail. A person is deemed to be readily iden-

tifiable from a photograph "when one who views the photograph with the naked eye can reasonably determine that the person depicted in the photograph is the same person who is complaining of its unauthorized use." Cal. Civ.Code § 3344(b)(1). Because a likeness and a photograph are so similar—a photograph is a visual image that is obtained by using a camera while a likeness is a visual image of a person other than a photograph— we find application of this standard appropriate to likenesses as well as photographs. Therefore, we hold that in order to constitute Newcombe's likeness, the pitcher depicted in the advertisement must be readily identifiable as Newcombe.

■ Having viewed the advertisement, we hold that a triable issue of fact has been raised as to whether Newcombe is readily identifiable as the pitcher in the advertisement. Initially, we note that the drawing in the advertisement and the newspaper photograph of Newcombe upon which the drawing was based are virtually identical. The pitcher's stance, proportions and shape are identical to the newspaper photograph of Newcombe; even the styling of the uniform is identical, right down to the wrinkles in the pants. The defendants maintain that stance alone cannot suffice to render a person readily identifiable, and that even if it could, the drawing of the pitcher in the advertisement was essentially generic and could have been any one of thousands of people who have taken to the pitcher's mound to throw a baseball. We disagree.

It may be the case that Newcombe's stance is essentially generic, but based on the record before us, Newcombe is the only one who has such a stance. The record contains pictures of other pitchers in the windup position but none of these pitchers has a stance similar to Newcombe's, thus giving us no basis to reach the conclusion proposed by the defendants that the pitcher in the advertisement is "generic." Further-

---

**3.** We have previously noted that a common law misappropriation claim can arise not only from use of one's likeness but also from the use of one's identity. *See White v. Samsung Electronics America, Inc.,* 971 F.2d 1395, 1397–98 (9th Cir. 1992). However, Newcombe's common law

claim need not be analyzed under the more broad, flexible identity standard. As mentioned below, we find that there is a triable issue of fact as to whether defendants used Newcombe's likeness.

more, Matthew Reinhard, the Art Director at Belding, declared that a prior work of Cassidy's, which depicted former San Francisco Giant pitcher Juan Marichal in his unorthodox high-leg-kick windup, would not have been suitable for the advertisement at issue because Marichal's windup was too distinctive. Reinhard's admission that a pitcher's windup could be so distinctive so as to make that player readily identifiable, regardless of the visibility of his face or the markings on the uniform, bolsters our determination that there is a genuine issue of material fact as to whether Newcombe's stance was so distinctive that the defendants used his likeness by using a picture of Newcombe's stance.

In addition to the identifiability of the pitcher in the advertisement as Newcombe based on the pitcher's stance, the pitcher's skin is moderately dark, which is quite similar to Newcombe's skin color. A jury could rationally find from this that Newcombe was readily identifiable, even though his facial features were not entirely visible.

Furthermore, while the drawing in the advertisement was slightly altered from the newspaper photograph, that does not alter our conclusion that there is a genuine issue of material fact as to whether the advertisement made use of Newcombe's likeness. For example, the uniform number in the advertisement ("39") is only slightly different than Newcombe's number ("36")—the first number is the same and the second number is simply inverted and the advertisement utilized the same block style numbers that were used on Newcombe's jersey—and it is arguable that the similarity in numbers could either consciously or subconsciously conjure up images of Newcombe. *See Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821, 822 & 827 (9th Cir.1974)(plaintiff's identity had been used despite fact that number on the plaintiff's car had also been changed from "11" to "71"). Also, we do not find persuasive the fact that the coloring of the bill of the hat in the advertisement is different, in light of the fact that the rest of the uniform is identical to the uniform in the newspaper photograph of Newcombe. *See id.* (plaintiff's identity had been used even though exterior of the car had been altered).

We find that there is a genuine issue of material fact as to whether the defendants made use of Newcombe's likeness. However, our assessment of whether summary judgment in favor of defendants on these two claims was improper does not end here.

 As to the remaining factors for a common law misappropriation claim, the second prong of the *Eastwood* test has been met in that Newcombe's likeness was certainly used to Coors' and Belding's commercial advantage as the drawing which resembled Newcombe was a central figure in the advertisement and the purpose of the advertisement was to attract attention. *See Eastwood*, 149 Cal.App.3d at 420, 198 Cal.Rptr. 342 ("one of the primary purposes of advertising is to motivate a decision to purchase a particular product or service. The first step toward selling a product or service is to attract the consumers' attention."). However, the use of Newcombe's likeness could not be said to have directly benefited Time, Inc., the publisher of *Sports Illustrated*, because the benefit they received—payment for the advertising space—was unrelated to the contents of the advertisement. Therefore summary judgment was appropriate as to defendant Time, Inc. but not as to defendants Coors and Belding with regard to Newcombe's common law claim.

The third and fourth prongs of the *Eastwood* test were satisfied with respect to Coors and Belding because Newcombe did not consent to the use of his likeness, and he was injured because he was not compensated for the use of his likeness. As a result, we hold that summary judgment was improper as to Coors and Belding on Newcombe's common law misappropriation claim.

 With regard to Newcombe's statutory claim, the district court alternatively held that summary judgment was appropriate because Newcombe had failed to establish a direct connection between the use of his likeness and defendants' commercial purpose. Section 3344(e) states that not all uses of likeness are a "use" that requires consent; only those uses where the "likeness was so directly connected with the commercial sponsorship" constitute a "use" under § 3344(a).

However, whether such a connection is present "shall be a question of fact." Cal. Civ. Code § 3344(e). Despite the express command that the connection between defendants' use of Newcombe's likeness and the commercial sponsorship of Killian's Red Beer is a matter of fact, the district court concluded that summary judgment in favor of defendants was appropriate as "it is beyond dispute that defendants were not trying to use plaintiff's identity to sell beer." We disagree. It would not be unreasonable for a jury to conclude that there was a direct connection between Newcombe, as the central feature of the advertisement, and the commercial sponsorship of Killian's Red.

■■■ A final consideration in evaluating Newcombe's statutory claim is the fact that Cal. Civ.Code § 3344(f) expressly exempts from liability "owners of any medium used for advertising ... by whom any advertisement or solicitation in violation of this section is published or disseminated, unless it is established that such owners or employees had knowledge of the unauthorized use of the person's ... likeness as prohibited by this section." This exemption absolves Time, Inc. from liability, as Newcombe has failed to allege that Time, Inc. knew that Newcombe had not authorized use of his likeness. However, this exemption from liability is not available to either Coors or Belding. Therefore, summary judgment on Newcombe's statutory claim was appropriate only as to defendant Time, Inc.

Accordingly, we reverse the district court's grant of summary judgment in favor of Coors and Belding on Newcombe's common law misappropriation and Cal. Civ.Code § 3344 claims.

## B. Equitable Relief and Constructive Trust

■■■ We also reverse the district court's grant of summary judgment as to Newcombe's prayer for equitable relief and constructive trust. The district court had granted summary judgment as to these claims because summary judgment had been granted as to all of the substantive causes of actions, thus not giving Newcombe a basis from which to receive a remedy. Because we hold that Newcombe is entitled to proceed to trial on his common law claim against Coors and Belding, he is also entitled to proceed on his claim for equitable relief and constructive trust against these defendants.

## C. Defamation and False Light

■■■ Newcombe next argues that he was defamed by the publication of the advertisement because it is libelous to suggest that he, as a recovering alcoholic, endorses alcohol. Newcombe also contends that because the advertisement made it appear that he endorses alcohol, this gives rise to the tort of false light. California courts have determined that a false light claim that rests on the false nature of the publication is substantively equivalent to a libel claim based on the same publication. *See Fellows v. National Enquirer, Inc.*, 42 Cal.3d 234, 228 Cal.Rptr. 215, 721 P.2d 97 (1986); *Kapellas v. Kofman*, 1 Cal.3d 20, 35 n. 16, 81 Cal.Rptr. 360, 459 P.2d 912 (1969). Therefore, we need not undertake a separate analysis for each of these claims.

■■■■ Under Cal. Civ.Code § 45a, a plaintiff may only prevail on a claim for libel if the publication is libelous on its face or if special damages have been proven.[4] New-

---

**4.** There are also constitutional hurdles that a defamation plaintiff must overcome in addition to meeting the above statutory requirements. In *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686, (1964), the Supreme Court held that the freedom of speech guaranteed by the First and Fourteenth Amendments prohibits "a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not," lest debate on important public matters be chilled. This analysis was later extended to speech regarding "public figures." *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (plurality).

The free speech concerns are not as great when a publication involves a private person and matters of private concern and therefore we do not require such a demanding standard to allow a private plaintiff to prevail. A private person who is allegedly defamed concerning a matter that is not of public concern need only prove, in addition to the requirements set out by the local jurisdiction, that the defamation was due to the

combe has not met either requirement. A publication is libelous on its face only if there is no need to have explanatory matter introduced. Cal Civ.Code § 45a. The determination as to whether a publication is libelous on its face is one of law, and is to be measured by the effect the publication would have on the mind of the average reader. *MacLeod v. Tribune Publishing Co., Inc.,* 52 Cal.2d 536, 547, 343 P.2d 36 (1959). Newcombe has presented no evidence that an average person viewing the advertisement would think that it was defamatory to suggest that the pitcher was endorsing alcohol. The only way an average person viewing the advertisement might think that it was defamatory was if the person was made aware of Newcombe's status as a recovering alcoholic; this is a textbook example of "explanatory matter."

Newcombe also failed to meet the alternative requirement that special damages be pled when the defamatory language is not libelous on its face. Cal. Civ.Code § 45a. Special damages are defined as "all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other." Cal. Civ. Code § 48a. Newcombe submitted a declaration that stated he had incurred the following expenses due to the publication of the advertisement: "purchase of medications for headaches and stress, gasoline for travel to Dodger Stadium, numerous local and long distance telephone calls, purchase of the subject magazine, photocopy of the ad, purchase of non-local newspapers and other expenses." [5] None of these expenses constitutes special damages because they do not relate to Newcombe's "property, business, trade, profession or occupation." Cal. Civ. Code § 48a. The only expenses that are arguably special damages—purchase of med-

ications for headaches and stress—cannot qualify as special damages because Newcombe admitted in his deposition that he did not know whether the publication of the advertisement caused him to have to take medication. Because Newcombe has failed to prove that the allegedly defamatory meaning of the advertisement was apparent from its face, and because he has failed to prove special damages, we affirm the district court on this claim.

### D. Negligence

Newcombe's penultimate claim is that the defendants were negligent in the *creation* of the advertisement because they failed to adequately investigate whether the artist's rendition of the pitcher depicted a real person. The district court determined that it was not possible to have a negligent *creation* claim because a claim for negligence must include a claim for damages that were the result of the negligence, and there was simply no damage from the creation of the ad; the only alleged damages resulted from the publication of the ad. As such, the district court characterized Newcombe's negligence claim as a claim for negligent *publication* of the advertisement; i.e. the defendants were negligent because they published the advertisement before adequately investigating how the advertisement was prepared. The district court then concluded that a claim for negligent publication is essentially the same as either a claim for misappropriation or for defamation, and that the constitutional and statutory principals regarding those standards cannot be circumvented by artful pleading. We agree with the district court's analysis and affirm on this claim.

### E. Intentional Infliction of Emotional Distress

Newcombe's final claim is that the defendants are liable for intentional in-

---

negligence of the defendant. *Gertz v. Robert Welch Inc.,* 418 U.S. 323, 347, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). There is a strong argument that Newcombe is subject to the more rigorous constitutional standard because he is either an all-purpose public figure based on his baseball fame, or at least a limited public figure because he voluntarily thrust himself into the public issue of the anti-alcohol movement. *See Id.* at 351, 94 S.Ct. 2997. However, we need not decide this

question because even under the least demanding standard, Newcombe has failed to offer evidence that would allow him to recover under the California defamation statute.

**5.** The "gasoline for travel to Dodger Stadium" expense was apparently included because when Newcombe was first told about the ad, he drove to Dodger Stadium to view the magazine.

fliction of emotional distress. To prevail on a claim for intentional infliction of emotional distress, the plaintiff must prove the following: (1) the defendants' conduct was outrageous; (2) the defendants intended to cause, or recklessly disregarded the likelihood of causing, emotional distress; (3) the plaintiff experienced severe emotional suffering; and (4) actual and proximate cause of emotional distress. *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155 n. 7, 233 Cal.Rptr. 308, 729 P.2d 743 (1987).[6]

■ First, there is no evidence that the defendants engaged in conduct that was intentionally outrageous. The evidence only indicated that the defendants intended to create an advertisement that evoked feelings of nostalgia by including an old-fashioned, and generic, baseball scene. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (outrageous conduct is that which is "so extreme as to exceed all bounds of that usually tolerated in a civilized society."). Second, even though the pitcher portrayed in the advertisement was virtually identical to the newspaper photograph of Newcombe that Cassidy used as a "model," Cassidy declared that he did not know who Newcombe was or that Newcombe was a recovering alcoholic. Therefore we cannot say that Cassidy copied the photograph with an intent to harm Newcombe. Furthermore, there is no evidence that anyone else associated with the production of the advertisement intended that it portray Newcombe, nor that they were aware that the drawing closely resembled Newcombe. Therefore, we cannot impute to the defendants an intent to inflict emotional distress on Newcombe. For these reasons, the district court did not err in granting summary judgment on this claim.

## CONCLUSION

Because there is a genuine issue of material fact as to whether Newcombe's identity was used in the advertisement, we reverse the district court's grant of summary judgment in favor of defendants Coors and Belding on his Cal. Civ.Code § 3344 claim, his common law claim of commercial misappropriation and the claim for equitable relief and constructive trust. In all other respects, we affirm the judgment of the district court.

**AFFIRMED** in part and **REVERSED** in part. Defendants to bear costs.

6. Free speech concerns also require a public figures to prove that the publication contained a false statement of fact which was made with " 'actual malice,' i.e. with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Hustler Magazine*

*v. Falwell,* 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). We need not decide if Newcombe is a public figure because he has failed to prove that the above requirements have been met.