**IBC AVIATION SERVICES, INC.,**
a California corporation,
Plaintiff,

v.

**COMPAÑIA MEXICANA DE AVIACION, S.A. DE C.V., d/b/a/ Mexicana Airlines, a Mexican corporation; Aeromexpress, S.A. de C.V., a Mexican corporation, Defendants.**

**No. SC 00–3244.**

United States District Court,
N.D. California.

Dec. 19, 2000.

W. George Wailes, Carr, McClellan, Ingersoll, Burlingame, CA, for plaintiff.

Douglas Irving, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, CA, John Holman Barr, M. Forest Nelson, Leonard H. Plog, II, Burt Barr & Associates, Dallas, TX, for defendants.

### ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DENYING DEFENDANTS' MOTION TO TRANSFER VENUE

CONTI, District Judge.

## I. INTRODUCTION

Plaintiff IBC International Services, Inc. filed a complaint against Defendants in Superior Court of California, County of San Mateo. The complaint alleges breach of contract, breach of the covenant of good faith and fair dealing, defamation, trade libel, intentional interference with contract, international interference with prospective business advantage, unfair competition, and declaratory relief arising out of a Cargo Handling Agreement between IBC and Mexicana. Defendants removed the matter to this Court pursuant to 28 U.S.C. § 1332(a)(2), and the Court has jurisdiction based on diversity. Presently before the Court are Plaintiff's motion for leave to amend the complaint and Defendants' motion to transfer the action to the Central District of California, Los Angeles Division.

## II. BACKGROUND

Plaintiff IBC International Services, Inc. ("IBC") is a California corporation that provides cargo handling services to airlines. Defendant Compañia Mexicana de Aviacion ("Mexicana") is a Mexican corporation, operating a cargo airline with operations in Mexico and internationally, including in the United States. Defendant AeroMexpress is a Mexican corporation responsible for overseeing IBC's cargo services for Mexicana.

IBC and Mexicana entered into a Cargo Handling Agreement on March 12, 1997, under which IBC was to handle Mexicana's cargo at Los Angeles International Airport.[1] Pursuant to an addendum, the start date of the agreement was September 16, 1997. The initial term of the agreement was five years from the start date, and either party could terminate the agreement "with 90 days written notice at anytime after the initial term three (3) years." The agreement also contains an arbitration clause stating that controversies or claims arising out of the agreement shall be determined and settled in accordance with the laws of California and "effected under the Commercial Arbitration rules of the American Arbitration Association of Los Angeles California."

Plaintiff began providing cargo handling services on September 16, 1997. In 1998, AeroMexpress assumed oversight responsibilities of the cargo operations at the facility. Plaintiff alleges that AeroMexpress, principally through its Vice President of Sales, Steven Connolly, refused to cooperate with IBC, failed to provide equipment as provided in the agreement, interfered with IBC performance of the contract, and denigrated IBC to IBC's affiliates and customers. In its moving papers, IBC alleges that it was Mr. Connolly who refused to provide IBC support, instructed IBC employees to follow procedures in violation of federal regulations and AeroMexpress' policy, complained about IBC's service to business affiliates, blocked IBC's access to the Cargo Handling Facility, and ultimately, instigated Mexicana's breach of the Cargo Handling Agreement.

On March 13, 1998, December 10, 1999, and June 16, 2000, Mexicana sent IBC notice that it wished to terminate the agreement. The June 16, 2000 notice indicated that termination was to be effective as of September 16, 2000, three years to the day of the start date. Plaintiff informed Mexicana that it believed Mexicana could not provide notice until September 16, 2000 with termination occurring 90 days thereafter. On September 16, 2000, Plaintiff was denied access to the facility, and another cargo handling services company assumed cargo handling for Mexicana.

On August 2, 2000, Plaintiff filed a complaint in the Superior Court of California, County of San Mateo, against Mexicana and AeroMexpress asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, defamation, trade libel, intentional interference with contract, international interference with prospective business advantage, unfair competition, and declaratory relief.

On September 8, 2000, Defendants removed the action to the Northern District of California. On September 15, 2000, Defendants filed their answer to the complaint and counterclaimed for declaratory relief, breach of contract, defamation, trade libel and disparagement, tortious interference with contract, interference with prospective business advantage, and unfair competition. On September 29, 2000, Defendants filed the present motion seeking transfer of the action to the district court in the Central District of California, Los Angeles Division.

On October 12, 2000 Plaintiff sought leave to file an amended complaint adding Steven G. Connolly as a Defendant. The amended complaint also dropped the declaratory relief claim and sought to add a claim for unfair business practices in violation of California Business and Professions Code § 17200.

### III. *PLAINTIFF'S MOTION TO AMEND COMPLAINT*

#### A. *Legal Standard*

If after removal the plaintiff seeks to join additional defendants whose joinder

---

1. In addition, Mexicana and IBC entered into a separate Sublease Agreement on March 12, 1997, effective September 16, 1997, whereby Mexicana leased to IBC approximately 18,200 square feet of warehouse and office space at the Los Angeles International Airport.

would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to state court. 28 U.S.C. § 1447(e). Congress added subsection (e) to § 1447 with the express purpose of taking advantage of the opportunity opened by removal from a state court to permit remand if a plaintiff seeks to join a diversity-destroying defendant after removal. *See* H.R.Rep. No. 889, 100th Cong., 2d Sess. 72–73, reprinted in 1988 U.S.C.C.A.N. 6033. As one court realized: "Joinder coupled with remand may be more attractive than either dismissal under civil rule 19(b) or denial of joinder." *Righetti v. Shell Oil Company*, 711 F.Supp. 531, 534 (N.D.Cal.1989). Under § 1447, whether to permit joinder of a party that will destroy diversity jurisdiction remains in the sound discretion of the court; *see Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir.1998); *Palestini v. General Dynamics Corporation*, 193 F.R.D. 654, 658 (C.D.Cal.2000); *Clinco v. Roberts*, 41 F.Supp.2d 1080, 1082 (C.D.Cal. 1999); and will be reviewed under an abuse of discretion standard, *see Newcombe*, 157 F.3d at 691.

■ Courts generally consider the following factors when deciding whether to allow amendment to add non-diverse defendants: (1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff. *Palestini*, 193 F.R.D. at 658; *see also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 352, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (discussing statute of limitations); *Newcombe*, 157 F.3d at 691 (addressing prejudice to plaintiff); *Lopez v. General Motors Corp.*, 697 F.2d 1328, 1331 (9th Cir.1983) (considering Rule 19 joinder, relation back and delay); *Desert Empire Bank v. Ins. Co. of N. America*, 623 F.2d 1371, 1376 (9th Cir. 1980) (addressing motive); *Clinco*, 41 F.Supp.2d at 1082 (addressing merit of claim); *see generally*, William Schwarzer, et al., California Practice Guide, Federal Civil Procedure Before Trial, 2D–202, § 2:1078 (2000) (citing cases).

Plaintiff asserts that amendment should be freely granted in the absence of bad faith, undue delay, prejudice and futility. These are the factors that courts use to determine the propriety in allowing amendment generally. While there is a certain degree of overlap, courts use the factors recently listed in *Palestini* to scrutinize amendment more closely when the amendment will defeat diversity jurisdiction. *See Desert Empire Bank v. Ins. Co. of N. America*, 623 F.2d 1371, 1376 (9th Cir.1980). The Court therefore employs the more specific six-factored test in its analysis of whether amendment should be allowed.

**B. *Analysis***

■ First, Federal Rule of Civil Procedure 19 requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations. Fed.R.Civ.P. 19(a). A necessary party is one "having an interest in the controversy, and who ought to be made [a] part[y], in order that the court may act on that rule which requires it to decide and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." *CP Nat'l. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir.1991) (quoting *Shields v. Barrow*, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158 (1854)). This standard is met when failure to join will lead to separate and redundant actions. *See id.* at 910. Although courts consider whether a party

would meet Fed. R. Civ. Proc. 19's standard for a necessary party, amendment under § 1447(e) is a less restrictive standard than for joinder under Fed. R. Civ. Proc. 19. *See Trotman v. United Parcel Service,* 1996 WL 428333, *1 (N.D.Cal. 1996). Courts disallow joinder of non-diverse defendants where those defendants are only tangentially related to the cause of action or would not prevent complete relief. *See, e.g., Red Buttons v. National Broadcasting Co.,* 858 F.Supp. 1025, 1027 (C.D.Cal.1994) (disallowing amendment to add non-diverse defendants who were not involved with the production alleged to be defamatory).

Plaintiff asserts that Mr. Connolly was the principal person responsible for the acts underlying its claim against Mexicana and AeroMexpress. Connolly, a key AeroMexpress' management employee who was involved in overseeing IBC's cargo handling services and who is alleged to have slandered IBC's performance, bears more than a tangential relationship to the cause of action. Disallowing the amendment would hinder IBC from asserting its rights against an employee directly involved in the alleged breach of the Cargo Handling Agreement and related causes of action.

Second, even though a state court action against Mr. Connolly might be possible,[2] requiring IBC to litigate essentially the same issues in two forums would be a waste of judicial resources and risks inconsistent results.

Third, courts consider delay is seeking amendment when determining whether to allow amendment to add a non-diverse party. *See, e.g., Lopez,* 697 F.2d at 1332 (disallowing amendment to add defendant who was eliminated in the First Amended complaint); *Clinco,* 41 F.Supp.2d at 1083 (finding amendment less than six weeks after complaint to be timely). Plaintiff filed its complaint on August 2, 2000. Defendants filed an answer and sought removal on September 8, 2000. On September 28, Plaintiff's counsel requested Defendants stipulate to allowing the addition of Mr. Connolly. Defendants refused to stipulate, and Plaintiff filed the present motion shortly thereafter on October 12, 2000. The Court finds Plaintiff acted in a timely fashion and did not unreasonably delay in seeking amendment.

Fourth, "the motive of a plaintiff in seeking the joinder of an additional defendant is relevant to a trial court's decision to grant the plaintiff leave to amend his original complaint." *Desert Empire Bank v. Ins. Co. of N. America,* 623 F.2d at 1376. Defendants contend that IBC seeks to add Mr. Connolly in order to destroy diversity, necessitating a remand to state court, the forum which Plaintiff prefers. The Court declines to impute an improper motive to Plaintiff simply because Plaintiff seeks to add a non-diverse defendant post-removal. Suspicion of diversity destroying amendments is not as important now that § 1447(e) gives courts more flexibility in dealing with the addition of such defendants. *See Trotman,* 1996 WL 428333 at *1 ("The legislative history to § 1447(e) ... suggests that it was intended to undermine the doctrine employed by some courts that amendments which destroyed diversity were to be viewed with suspicion."); *see also* HR Rep No 889, 100th Cong, 2d Sess 72, reprinted in 1988 U.S.C.C.A.N. 6033 (stating purpose of § 1447(e) is to "take advantage of the opportunity opened by removal from a state court to permit remand if a plaintiff seeks to join a diversity-destroying defendant after removal"). In light of Mr. Connolly's alleged role in the breakdown of the relationship between IBC and Defendants, the Court finds IBC's desire to add Mr. Connolly as an individual defendant to be reasonable and justifiable.

Fifth, courts consider whether the claim sought to be added seems meritorious.

---

**2.** Plaintiff has not specifically addressed whether the statute of limitations or any other legal requirement preclude Plaintiff from asserting its claims against Connolly in a separate action in state court.

*See, e.g., Clinco,* 41 F.Supp.2d at 1083; *Goodman v. Travelers Ins. Co.,* 561 F.Supp. 1111, 1113–14 (N.D.Cal.1983). The Court recognizes, and Defendants do not contest otherwise, that Plaintiff may have valid claims against Mr. Connolly.

Finally, denying the amendment would require Plaintiff to choose between redundant litigation arising out of the same facts and involving the same legal issues or foregoing its potential claims against Mr. Connolly, while allowing amendment will not prejudice the Defendants as discovery has not yet begun. Furthermore, Defendants have other options to avoid an unwanted forum. They can move the state court to transfer venue. Alternatively, they can invoke the arbitration clause.

Looking at the factors as a whole, the Court finds amendment is warranted on the grounds that Mr. Connolly is more than tangentially related to the Plaintiff's claims, amendment would conserve judicial resources and reduce the risk of inconsistent results, Plaintiff's request for leave to amend was not unreasonably delayed, the claims against Connolly appear viable, and amendment will not prejudice the parties.

## IV. DEFENDANTS' OBJECTIONS TO VENUE AND MOTION TO TRANSFER

As a preliminary matter, the Court finds that venue is proper in the Northern District of California. Venue in cases removed from state court are governed by 28 U.S.C. § 1441, rather than 28 U.S.C. § 1391, which is the general venue statute. Under § 1441(a), venue is proper in the judicial district encompassing the state court where action was brought. 28 U.S.C. § 1441(a). Since the Northern District of California encompasses the County of San Mateo, removal to this Court complies with the federal venue requirement.

Defendants contend that venue in the San Mateo County Superior Court was improper under state law and that they have the same rights to challenge venue as they would have had in the state court. California Civ. Proc. § 395.5 allows suit in "the county where the contract was made or is to be performed, or where the obligation or liability arises, or the breach occurs ...." Assuming *arguendo* that none of these acts occurred in San Mateo,[3] and therefore venue was improper in the state court, the issue is whether Defendants may still contest venue in this Court by relying on state venue requirements.

It is clearly established that timely removal to federal court does not waive a defendant's right to raise venue objections. *See Soil Sheild Int'l, Inc. v. Lilly Industries, Inc.,* 1998 WL 283580, *2 (N.D.Cal.1998) (allowing objection to venue based on forum selection clause after removal); *Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A. (Illinois), Inc.,* 118 F.Supp.2d 997, 999–1000 (C.D.Cal. 2000) (same); *see also, Lambert v. Kysar,* 983 F.2d 1110, 1113 (1st Cir.1993) (same); *PT United Can Co., Ltd. v. Crown Cork & Seal Co.,* 138 F.3d 65, 73 (2d Cir.1998). Thus, where the underlying contract designates a specific forum, federal courts generally uphold the parties' designated forum, rather than merely requiring compliance with § 1441.

Historically, a federal district court did not acquire jurisdiction on removal where the state court lacked jurisdiction of the subject matter or of the parties, see *Lambert Run Coal Co. v. Baltimore & Ohio R. Co.,* 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922) ("As the state court was without jurisdiction over either the subject-matter or the United States, the District Court could not acquire jurisdiction over them by the removal."); *General Inv. Co. v. Lake Shore & M.S. Ry. Co.,* 260 U.S. 261, 288, 43 S.Ct. 106, 67 L.Ed. 244, (1922) ("When a cause is re-

---

**3.** It appears that the Cargo Handling and SubLease Agreements were executed in Mexico City, while the addendum was signed by Mr. Chrislieb for Mexicana in Mexico City and by Mr. Shea for IBC in San Francisco.

moved from a state court into a federal court, the latter takes it as it stood in the former."); *Venner v. Michigan Central R. Co.*, 271 U.S. 127, 130–31, 46 S.Ct. 444, 70 L.Ed. 868 (1926); *State of Minnesota v. United States*, 305 U.S. 382, 389, 59 S.Ct. 292, 83 L.Ed. 235 (1939) ("[J]urisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction."); *Freeman v. Bee Machine Co.*, 319 U.S. 448, 449, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943). Federal courts lacked jurisdiction on removal even if the court would have had jurisdiction if the suit were initially brought there. *Lambert Run Coal Co.*, 258 U.S. at 382, 42 S.Ct. 349. ("The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction.").

In 1986, Congress amended § 1441, adding subsection (e) which states: "The court to which such civil action is removed is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim." 28 U.S.C. § 1441(e). As a result, a federal district court's jurisdiction is no longer dependent on "derivative jurisdiction" and could assert jurisdiction over a matter removed from a state court where venue was improper under state law, but compliant with § 1441.

Defendants rely on *P.T. United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir.1998), in challenging venue based upon plaintiff's failure to comply with state law venue requirements. In *P.T. United Can*, the court relied on and cited to the early pre–1986 line of "derivative jurisdiction" cases in holding that a defendant did not waive objections to venue under state law by removing to federal court. Whether defendants could seek dismissal under the doctrine of *forum non conveniens* after removal poses a slightly different question than whether defendants can assert objections to venue based on state law in federal court after removal. Subsection (e) clearly allows a federal

court to hear matters without needing jurisdiction derived from the state court. Even so, like the Second Circuit, this Court recognizes that venue is not fixed, and a defendant may seek transfer to an alternative forum on convenience grounds under 28 U.S.C. § 1404(a).

Having found venue proper, the Court turns to Defendants' motion for transfer under 28 U.S.C. § 1404(a). Since the Plaintiff's Amended Complaint will destroy complete diversity and necessitate remand to the state court from which the action was removed, the state court is a more appropriate court to determine whether convenience factors warrant a transfer of venue. As a result, the Court denies Defendants' Motion for Transfer.

## V. CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Plaintiff's request for leave to amend its complaint, and DENIES Defendants' request for a transfer to the Central District of California, Los Angeles Division.

IT IS FURTHER ORDERED that the action be REMANDED to the Superior Court of California, County of San Mateo.

IT IS SO ORDERED.