James R. MURPHY, Executor of the Estate of Robert Gavin Brownlee, Deceased, Plaintiff–Appellant,

v.

T. ROWE PRICE PRIME RESERVE FUND, INC., a Maryland corporation; T. Rowe Price Associates, Inc., a Maryland corporation; T. Rowe Price Services, Inc., a Maryland corporation; and Does 1 through 100, inclusive, Defendants–Appellees.

No. 92–15087.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 18, 1993.

Decided Nov. 4, 1993.

Daniel S. Mount and James M. Ingram, Mount & Stoelker, and Robert T. Borawski, San Jose, CA, for plaintiff-appellant.

Terry M. Gordon, Epstein Becker & Green, San Francisco, CA, for defendants-appellees.

Before: FAIRCHILD *, BEEZER, and WIGGINS, Circuit Judges.

BEEZER, Circuit Judge:

Robert Brownlee, now deceased, held a check closing out his mutual fund account for three years. Now the question is, who is entitled to the interest accrued on the funds evidenced by the uncashed check? The district court granted summary judgment for the defendants (hereinafter "Price"). We affirm in part and reverse and remand in part.

## I

Brownlee's financial consultant requested that Price close out Brownlee's account at Price. Price transferred the funds evidencing the redemption proceeds of Brownlee's mutual fund account into a checking account at a bank. Under an agreement between Price and the bank, Price was not paid interest on the checking account balance. Rather, the bank reduced the service charges that Price would normally have to pay on the account. (Murphy's claim, then, technically concerns the right to imputed interest.)

Price mailed a check for $407,051.04, the liquidated value of the mutual fund account, directly to Brownlee, who did not open the envelope for three years. By that time, the check was stale. Price reissued the check to Brownlee. Brownlee's financial consultant demanded that accrued interest be paid, which demand was denied. Brownlee then retained an attorney, who again asked that accrued interest be paid. At first, a Price representative agreed to pay the interest, minus 18% for processing and other charges. Later, Price refused to tender any interest to Brownlee. Murphy, the executor of Brownlee's estate, then brought this action on behalf of the estate.

Price declared that it had no duty to pay any interest. Price relied on Cal.Civil Code § 1504, which provides that "[a]n offer of payment ... duly made, though the title to the thing offered be not transferred to the creditor, stops the running of interest on the obligation, and has the same effect upon all its incidents as a performance thereof." Price contended the oral agreement to pay interest was unenforceable because there was no consideration for its promise.

The district court granted Price's motion for summary judgment. The court concluded that § 1504 stopped the running of interest on the check. The court declined to impose a constructive trust because there was no res, since Price did not receive interest on the account but instead received a credit which was offset against the service charge Price would otherwise have owed the bank. Finally, the court held the oral agreement, if any, was unenforceable for lack of consideration. Murphy appeals.

## II

We review the district court's grant of summary judgment de novo. *Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 943 (9th Cir.), *cert. denied*, ‑‑‑ U.S. ‑‑‑, 113 S.Ct. 80, 121 L.Ed.2d 44 (1992). The de novo standard applies for review of questions of state law. *State Farm Fire & Casualty Co. v. Estate of Jenner*, 874 F.2d 604, 606 (9th Cir.1989). The parties did not identify any disputes of material fact.

## III

The district court held that Price was not obligated to give Murphy any interest accrued during the time that Brownlee did not

---

* Hon. Thomas E. Fairchild, Senior United States Circuit Judge for the 7th Circuit Court of Appeals, sitting by designation.

cash the check, since Cal.Civil Code § 1504 provides that tender of payment stops the running of interest on the amount tendered.

■ Murphy claims the district court erred because the money at issue was income, not interest, and § 1504 does not apply to income. According to Murphy, while the money was "interest" as between the bank and Price, it was "income" as between Price and Brownlee.

"Interest is the compensation allowed by law or fixed by the parties for the use, or forbearance, or detention of money." Cal.Civil Code § 1915. Murphy's strained interpretation of the term "interest" is not accurate. Were that interpretation correct, § 1504 would essentially be narrowed such that it would apply only in cases when a bank itself had tendered the checks. The California case law indicates that other parties besides banks can and do avail themselves of this provision. See, e.g., Covington v. Clark, 175 Cal.App.2d 449, 346 P.2d 229 (1959) (vendee need not pay interest to vendor on money tendered but refused by vendor); Rose v. Hecht, 94 Cal.App.2d 662, 211 P.2d 347 (1949) (tenant need not pay interest on rent money deposited in bank which had been tendered but refused by landlord). We decline to adopt Murphy's relativist definition of "interest."

A closer question is whether the "interest" derived by Price is "interest on the obligation" within Cal.Civil Code § 1504. The benefit derived by Price on its bank account can be distinguished from the "interest" that would be owing on Price's obligation to pay Brownlee the proceeds of his mutual fund account if Price had delayed payment. Any such distinction does not alter our conclusion. Section 1504 goes on to provide that an offer of payment "has the same effect upon all ... incidents [of the obligation] as a performance thereof." We think the statute must mean that the creditor who refuses the offer of payment, even through inadvertence, as was the case with Brownlee, is not to recover such incidental benefit as the debtor may derive as a result of the refusal, or delay in acceptance, of the offer. A contrary reading would render the quoted passage superfluous.

IV

■ Murphy also contends the district court erred in not imposing a constructive trust. Under the terms of Cal.Civil Code § 2224, "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who otherwise would have had it." Murphy claims this is a case of mistake and that Price unjustly profited from Brownlee's mistake. Murphy asserts that a constructive trust should be imposed whenever a party is in possession of property that should equitably belong to another. Kraus v. Willow Park Public Golf Course, 73 Cal.App.3d 354, 373, 140 Cal.Rptr. 744 (1977).

■ A constructive trust is rarely imposed unless there is an allegation of wrongful behavior. The constructive trust's purpose is "to prevent a person from taking advantage of his own wrongdoing." Martin v. Kehl, 145 Cal.App.3d 228, 237, 193 Cal.Rptr. 312 (1983). "[A] constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled." Id. at 238, 193 Cal.Rptr. 312. See also Kraus, 73 Cal. App.3d at 374, 140 Cal.Rptr. 744 (involuntary trust is proper when "the person holding title to property, having wrongfully come into possession, whether by mistake or otherwise, would profit by a wrong or would be unjustly enriched if he were permitted to keep the property"); Clark v. Pullins, 171 Cal.App.2d 703, 341 P.2d 73, 76 (1959) (a "constructive trust is imposed not because of the intention of the parties, but because the person holding the property would profit by his wrong."); Rankin v. Satir, 75 Cal.App.2d 691, 171 P.2d 78, 81 (1946) (constructive trusts "take form whenever title is obtained by means of chicanery, deceit, or other variety of fraud, actual or constructive"); id. (constructive trust theory "is based upon the equitable principle that no one may take advantage of his own wrong"); Asher v. Reliance Ins. Co., 308 F.Supp. 847, 852 (N.D.Cal.

1970) (interpreting California law) (constructive trust is a "creature of equity, imposed by the law on a party to prevent his benefiting by that which he has wrongfully obtained or detained").

■ To succeed on the constructive trust claim, Murphy must demonstrate that Price was *unjustly* enriched by virtue of the mistake so that for. Price to keep the money would be somehow wrongful. *See First Nationwide Savings v. Perry,* 11 Cal.App.4th 1657, 1662, 15 Cal.Rptr.2d 173 (1992). Murphy's argument fails here: he cannot show that it would be unjust for Price to keep the money. In fact, Price was explicitly given a superior claim by the California legislature when it enacted § 1504. In view of the statute, Price's retention of any interest was not unjust.

As we hold that a constructive trust should not be imposed because Price was not unjustly enriched, we need not address the district court's holding that a constructive trust could not be imposed because there was no res.

## V

■ Murphy asserts that Price should be bound by its oral agreement to return all but 18% of the interest. Price counters that there was no consideration for the agreement, since § 1504 gives it a clear statutory right to retain the interest, so the agreement is unenforceable. Without deciding whether there had in fact been an oral agreement, the district court held Murphy's claims were invalid and therefore did not constitute consideration for any agreement.

■ An oral agreement is not enforceable without consideration. Compromise of a wholly invalid claim, one with no foundation, is not valid consideration. *Orange County Foundation for Preservation of Public Property v. Irvine Co.,* 139 Cal.App.3d 195, 201, 188 Cal.Rptr. 552 (1983); *Goldstone–Tobias Agency, Inc. v. Barbroo Enterprises Productions, Inc.,* 237 Cal.App.2d 720, 722, 47 Cal. Rptr. 347 (1965). However, surrender of a

possibly meritless claim which is disputed in good faith is valid consideration. *Stub v. Belmont,* 20 Cal.2d 208, 124 P.2d 826, 831 (1942); *Union Collection Co. v. Buckman,* 150 Cal. 159, 88 P. 708, 710 (1907). The rationale of these cases is that parties who settled in order to avoid litigation should be given the benefit of their bargain.

■ The district court determined that Murphy's claim was legally invalid. The court held, "[i]n light of the court's ruling that the estate had no valid claim to the interest to compromise, the court must conclude that there is no valid consideration to support the alleged accord." The district court erred in equating the potential validity of the claim ex ante with its own ex post conclusion as to the merits of the claim. A court cannot base its judgment on the validity of the claim on its determination of the merits of the claim to determine if there was consideration, or else an agreement to settle would be effectively nullified. *Stub,* 124 P.2d at 831.

Although California case law does not precisely define the term "invalid," "the relinquishment of a *colorable* legal claim" is valid consideration. *Orange County Foundation,* 139 Cal.App.3d at 200, 188 Cal.Rptr. 552 (emphasis added). Viewed ex ante, Murphy's claim, based on two distinct legal theories, was a colorable one and therefore not completely invalid. There was also no indication that Brownlee or Murphy were bringing the claim in bad faith or knew it to be meritless.[1] *Goldstone–Tobias,* 237 Cal. App.2d at 722, 47 Cal.Rptr. 347; *Orange County Foundation,* 139 Cal.App.3d at 201, 188 Cal.Rptr. 552.

We conclude that the surrender of this claim is sufficient consideration for an oral agreement to settle, so we reverse the summary judgment on the oral agreement issue. It does not necessarily follow that there was such an agreement, or specifically that Price made the agreement in order to settle a disputed claim. *See Enslow v. Von Guenthner,* 193 Cal.App.2d 318, 321, 14 Cal.Rptr.

---

1. Some California cases suggest that even surrender of an invalid claim is sufficient consideration if the party compromising the claim is unaware that the suit is meritless. *See, e.g.,* *McPike v. Superior Court of San Francisco,* 220 Cal. 254, 30 P.2d 17, 19 (1934); *Union Collection,* 88 P. 708 at 710.

231 (1961) (holding that "to constitute an effective compromise agreement there must exist some evidence of mutual intention of the parties that they are resolving differences"). We are not certain whether a desire to compromise a potentially meritorious claim motivated the agreement. According to an affidavit of Brownlee's attorney Borawski, Price's representative O'Brien spoke with him on the phone and said Price would give Brownlee the interest minus 18%. O'Brien said that "this presents no problem, this does happen with some regularity and that the policy of T. Rowe Price was to pay to the investor the amounts that had been earned on the account." On the other hand, another Price employee had earlier rejected a request for return of the money. The fact that O'Brien agreed to the request when later contacted by Brownlee's counsel suggests that Price did intend to compromise the claim. It is necessary to remand to resolve whether the parties made an agreement and mutually intended to compromise a disputed claim.

The district court's grant of summary judgment is

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**