Timothy D. **MURPHY**

v.

**AMERICAN GENERAL LIFE INSURANCE COMPANY.**

No. ED CV14–00486 JAK (SPx).

United States District Court, C.D. California.

Signed Jan. 15, 2015.

Timothy D. Murphy, Riverside, CA, pro se.

Edward J. Valdespino, Raymond J. Tittmann, Jodi Krystyn Swick, Edison McDowell and Hetherington LLP, Oakland, CA, for American General Life Insurance Company.

**Proceedings: (IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. 57)**

JOHN A. KRONSTADT, District Judge.

Andrea Keifer Deputy Clerk

## I. *Introduction*

Timothy E. Murphy ("Plaintiff") brought this action against American General Life Insurance Company ("AGL") and DOES 1–100 in the Riverside Superior Court on February 25, 2014. Complaint ("Compl."), Dkt. 1, Ex. 1 at 8. Plaintiff, who is self-represented and an attorney, claims to be a beneficiary of a $5,000,000 life insurance policy ("Policy") purchased by his parents from AGL. *Id.* The Complaint alleges a breach of contract based on the failure of AGL to pay benefits to Plaintiff after the death of his parents. *Id.* In response, AGL claimed that, because Plaintiff was never a beneficiary of the Policy, no benefits were owed or payable to him. *E.g.*, Answer, Dkt. 1, Ex. 1 at 14; Dkt. 14–1, Ex. A–G. AGL removed the action based on diversity jurisdiction. Dkt. 1.

Plaintiff moved to remand the action on the ground that the amount in controversy requirement was not satisfied. Dkt. 11. While the motion to remand was pending, Plaintiff filed a First Amended Complaint ("FAC") without first seeking leave as required under Fed.R.Civ.P. 15(a)(2). Dkt. 21. The FAC sought to add a non-diverse party, Shane Murphy ("Shane"),[1] who is Plaintiff's brother. *Id.* Plaintiff also named 19 new, diverse defendants in the FAC. *Id.* The claim for breach of contract was not amended. The Motion for Remand was denied. Dkt. 26.[2] The FAC was stricken on October 14, 2014, for failure to comply with Fed.R.Civ.P. 15(a)(2). Dkt. 52.[3] The underlying Complaint was also stricken at that time for failure to comply with Fed.R.Civ.P. 10(b). *Id.* In order to maintain the action, Plaintiff was required to file an amended complaint that conformed to this rule on or before October 28, 2014. *Id.*

Plaintiff filed a Second Amended Complaint ("SAC") on October 23, 2014. Dkt. 53. The SAC does not present a claim for breach of contract. *Id.* Instead, the SAC advances six causes of action against AGL, Shane, American International Group ("AIG"), 18 other named defendants and DOES 1–100, (collectively "Defendants"): (1) breach of fiduciary duty and conspiracy; (2) conversion and conspiracy; (3) money had and received, conspiracy, constructive trust and resulting trust; (4) constructive fraud; (5) tortious intentional interference with expectancy and conspiracy; and (6) an accounting. *Id.* AGL and AIG moved to dismiss the SAC pursuant to Fed.R.Civ.P. 12(b)(6) on November 10, 2014. Motion to Dismiss ("Motion"), Dkt. 57. Plaintiff filed an opposition. Dkt. 59. AGL and AIG filed a reply. Dkt. 66. The Motion was set for hearing on December 15, 2014. However, the Court determined that the matter was one that could be addressed without a hearing pursuant to Local Rule 7.15, and took the Motion under submission. Dkt. 73.

For the reasons set forth in this Order, Shane Murphy is **DISMISSED** as a defendant pursuant to 28 U.S.C. § 1447(e), and the Motion is **GRANTED** without prejudice as to defendants AGL and AIG.

## II. *Factual Background*

### A. General Allegations

The SAC alleges that Defendants conspired to deprive Plaintiff of his share of the proceeds from the sale of the Policy prior to the death of his parents. SAC ¶ 36. Plaintiff alleges that his parents—

---

1. The use of first names of those with a common surname is for clarity. No disrespect is intended by the use of this common convention.

2. The Order denying the motion to remand is incorporated by this reference.

3. The Order striking the FAC and Complaint is incorporated by this reference.

Robert H. and Shirley S. Murphy ("Robert" and "Shirley")—purchased the Policy from AGL on September 20, 2005. *Id.* ¶ 31. Plaintiff alleges that the policy was underwritten by AIG. *Id.*

The SAC alleges that, as of November 1, 2005, the beneficiary of the Policy was The Robert and Shirley Murphy Survivorship Trust ("RSMS Trust"). *Id.* ¶ 32. Plaintiff alleges that Gerald Morlitz ("Morlitz")[4] was its Trustee, and that he maintained an office in the same space as Rai Premium Finance, LLC ("RPF").[5] *Id.* ¶ 32. The SAC also alleges that, with the assistance of Morlitz, the RSMS Trust was formed on November 1, 2005. *Id.* ¶ 34. Plaintiff alleges that Fred. C. Cohen ("Cohen")[6] and Cohen, Norris, Wolmer, Ray, Telepmann and Cohen (the "Firm"),[7] were also involved in the creation of the RSMS Trust. *Id.*

The SAC alleges that the beneficiaries of the RSMS Trust were the six children of Robert and Shirley. *Id.* ¶¶ 34, 35. Plaintiff alleges that on or about November 9, 2005, Morlitz, acting on behalf of the RSMS Trust, assigned its interest in the Policy to RPF "in return for financing some of the premium due thereon." *Id.* ¶ 37. The SAC also alleges that Plaintiff's siblings have refused to provide to him a copy of the "indenture" of the RSMS Trust. *Id.* ¶ 35.[8] Plaintiff alleges that they did so to further the conspiracy to deny him from receiving his "beneficial interest" in the RSMS Trust. *Id.* ¶ 36.

The SAC also alleges that, in December of 2007, Mitchell K. Smith ("Smith"),[9] who is the managing partner of Gaines & Smith Financial Group ("GSFG"),[10] along with Rai Insurance Group, Inc. ("RIG"),[11] Morlitz, Cohen and Plaintiff's brother, Mark Murphy ("Mark"),[12] "conceived of a scheme and design to sell [the Policy] on the secondary market for cash." *Id.* ¶ 39. Plaintiff alleges that Smith, Mortliz and Mark "intended to receive cash commissions and/or compensation for their participation in the scheme." *Id.*

The SAC alleges that, in July 2008, RIG offered Morlitz $810,000 in exchange for the interest in the Policy held by the RSMS Trust. *Id.* ¶ 41. It also alleges that Morlitz breached his fiduciary duty to Plaintiff by "failing to disclose the offer to [P]laintiff and/or to act to [P]laintiff's advantage regarding the offer." *Id.* ¶ 41. The SAC then alleges that Morlitz disclosed RIG's offer to Cohen and the Firm (*id.* ¶ 42), and that they breached their respective duties to Plaintiff by failing to disclose the offer to him or otherwise to act for his benefit. *Id.*

The SAC next alleges that, on July 7, 2008, CNF II, LLC ("CNF")[13] agreed to purchase the Policy for $716,865. *Id.* ¶ 43. It also alleges that the purchase required the parties to sign certain documents. *Id.* The SAC alleges that Mark signed these documents as "attorney in fact" for Shirley without the authority to do so. *Id.* It also alleges that the purchase required consent

4. Morlitz is named as a defendant in the SAC.

5. RPF is named as a defendant in the SAC.

6. Cohen is named as a defendant in the SAC.

7. The Firm is named as a defendant in the SAC.

8. Plaintiff also alleges that AIG, AGL and other defendants have refused to provide the RSMS Trust indenture. SAC ¶ 35. He states

that, upon receiving the indenture, he will seek leave to amend the SAC to attach it. *Id.*

9. Smith is named as a defendant in the SAC.

10. GSFG is named as a defendant in the SAC.

11. RIG is named as a defendant in the SAC.

12. Mark is named as a defendant in the SAC.

13. CNF is named as a defendant in the SAC.

from all six of the beneficiaries of the RSMS Trust. *Id.* ¶ 44. The SAC then alleges that Smith, GSFG, Cohen and the Firm sought Plaintiff's consent to the transaction. *Id.* It then alleges that Plaintiff requested more information from Smith and GSFG about the terms, but never received a response. *Id.* Consequently, Plaintiff alleges that he did not consent. *Id.*

The SAC alleges that, without the consent of Plaintiff, the Policy was sold to CNF. *Id.* ¶ 46. This sale was not revealed to Plaintiff immediately. *Id.* It is alleged that the sale was part of the conspiracy among Morlitz, Cohen, the Firm, Smith, GSFG, RPF, RIG, AIG, AGL, CNF, Mark, Plaintiff's sister—Claudia Semplenski ("Semplenski"),[14] the estate of Robert (the "Robert Estate"),[15] the estate of Shirley (the "Shirley Estate"),[16] the Robert H. Murphy Trust (the "Robert Trust"),[17] the Shirley S. Murphy Trust (the "Shirley Trust"),[18] the Murphy Family Trust (the "Murphy Trust")[19] and the RSMS Trust (collectively, the "Conspirators"). *Id.* ¶¶ 46–47. The SAC also alleges that the Conspirators concealed the proceeds of the sale from Plaintiff and that he did not receive any portion of them. *Id.* It also alleges that the Conspirators communicated, wrote documents and withheld information from Plaintiff to further their plan to deprive him of his interest in the Policy. *Id.* ¶ 48.

The SAC alleges that in May 2009, Cohen made a false representation to Plaintiff, i.e., that Cohen represented Robert in various matters, including as to the Policy and his general financial affairs. *Id.* ¶ 45. It

also alleges that Cohen stated the Policy had been sold, but did not disclose his role in that transaction. *Id.*

B. Claims and Allegations as to AGL and AIG

The SAC alleges that AGL and AIG are co-conspirators with respect to the allegations in the following causes of action: the First, which is for "breach of fiduciary duty and conspiracy"; the Second, which is for "conversion and conspiracy"; the Third, which is for "money had and received, conspiracy, constructive trust and resulting trust"; and the Fifth, which is for "intentional interference with expectancy and conspiracy." The SAC also seeks an accounting against AIG and AGL. It also alleges that AGL wrote or underwrote the Policy (SAC ¶ 4) and that AIG underwrote the Policy. *Id.* ¶ 5.

The SAC alleges that AGL and AIG "organized, implemented, assisted, aided and/or abetted the sale of the policy(s) to which this complaint pertains and beneficiary entitlements therein so as to deprive [P]laintiff of his entitlements." *Id.* It also alleges that staff of AIG and AGL participated in the conspiracy when, after the sale of the Policy to CNF, a new Policy was issued in which CNF is listed as the "owner." *Id.* ¶ 46. Further, the SAC alleges that AGL refused to produce a copy of the Policy or disclose the named beneficiaries under the Policy in response to Plaintiff's January 2010 demand for this information. *Id.* ¶ 50. It also alleges that this request was denied again in April 2013. *Id.* ¶ 51. The SAC alleges that AGL informed Plaintiff

---

**14.** Semplenski is named as a defendant in the SAC.

**15.** The Robert Estate is named as a defendant in the SAC.

**16.** The Shirley Estate is named as a defendant in the SAC.

**17.** The Robert Trust is named as a defendant in the SAC.

**18.** The Shirley Trust is named as a defendant in the SAC.

**19.** The Murphy Trust is named as a defendant in the SAC.

that, because he was not a beneficiary under the Policy, it would not disclose the "existence of his beneficial interest" under the RSMS Trust indenture. *Id.* ¶¶ 50–51.

### C. Specific Claims and Allegations against Shane

The SAC brings the following causes of action against Shane: the Second, which is for "conversion;" the Third, which is for "money had and received, constructive trust and resulting trust;" and the Sixth, which seeks an "accounting." Plaintiff alleges that Shane, who is domiciled in California, is a "direct and/or indirect beneficiary of one or more of the same life insurance policy(s) of which [P]laintiff was a beneficiary whose interests will necessarily be affected or disposed by the judgment entered in this action." SAC ¶ 3. The SAC alleges that there is no federal question jurisdiction as to the claims against Shane. *Id.* ¶ 2.

The SAC alleges that Shane received some portion of the proceeds from the sale of the Policy to CNF. *Id.* ¶ 76.[20] It also alleges that Shane owes Plaintiff a portion of the sale proceeds that Shane received. *Id.* ¶ 77. Consequently, the SAC alleges that a resulting trust was created in which Plaintiff is the beneficiary and the corpus is the portion of proceeds that should have been allocated to him, but were instead distributed to Shane. *Id.* ¶¶ 77, 83; *see also id.* ¶ 82 (Plaintiff is entitled to a constructive trust). The SAC also alleges that Shane and others who received a portion of the proceeds from the sale of the Policy to CNF were part of the conspiracy to deprive Plaintiff of his share of them. *Id.* ¶ 78.

### D. Plaintiff's Memorandum in Support of the SAC

The October 14, 2014 Order required Plaintiff, who as noted above is an attorney, to submit a memorandum in conjunction with any amended complaint. Dkt. 52. Its purpose was to justify why any defendant other than AGL was necessary with respect to obtaining appropriate relief. *Id.* at 5. Further, Plaintiff was instructed that an allegation in an amended complaint would not be sufficient as to this issue if its substance were to the effect that "a new defendant is a 'necessary and indispensable party' because the person may have an interest in obtaining part of any potential relief awarded to Plaintiff." *Id.* Plaintiff was required to reflect on the claims proffered in any amended complaint before filing it to ensure that each was warranted, and that none was being asserted for an improper purpose. *Id.* Claims were also required to have an underlying factual basis, as required under Fed.R.Civ.P. 11(b). Plaintiff submitted a memorandum in response to the October 14, 2014 Order. Dkt. 54.

In the memorandum, Plaintiff argues that Shane is an appropriate defendant because he "received some of the proceeds of the sale of the insurance policies described by the complaint that rightfully belonged to plaintiff." *Id.* at 2. The memorandum also argues that, because Shane and Plaintiff are both citizens of California, there is no diversity jurisdiction and the matter should be remanded. *Id.* As to AIG, Plaintiff alleges that it is a necessary party because it underwrote the Policy and was part of the conspiracy to deprive Plaintiff of his right to a portion of the proceeds

---

**20.** In the same paragraph, Plaintiff alleges that Morlitz, Philip C. Murphy (another of Plaintiff's brothers), David Murphy (another of his brothers), Mark, Semplenski, Smith, GSFG, Cohen, the Firm, the Robert Estate, the Shirley Estate, the Shirley Trust, the Murphy Trust, the Robert Trust and the RSMS Trust each received a portion of the proceeds from the sale of the Policy to CNF. *Id.* ¶ 76.

when the Policy was sold. *Id.* at 3. The memorandum concludes with the following:

> The actual details of [the actions of Plaintiff's siblings] however, await discovery. They are appropriate to trial [sic] but not to federal standards of pleading requiring complaints to be expressed in brief statements of ultimate fact.

*Id.* at 8.

### III. *Analysis*

A. Whether Joinder of Shane Is Appropriate under 28 U.S.C. § 1447(e)

#### 1. *Legal Standards*

██ Generally, leave to amend must be "freely given" absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment" or other similar showings. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also* Fed.R.Civ.P. 15(a)(2). However, where a proposed amendment would add a non-diverse party after removal—thereby precluding existing, diversity jurisdiction—there is greater discretion in determining whether to allow the amendment. 28 U.S.C. § 1447(e); *see also Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 691 (9th Cir.1998).[21]

██ Section 1447(e) provides: "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Thus, under § 1447(e), a district court has two options. *Stevens v. Brink's Home Sec.,*

*Inc.,* 378 F.3d 944, 949 (9th Cir.2004). It may deny joinder and retain diversity jurisdiction in the case. *Id.* Alternatively, it may permit joinder; however, if joinder is permitted, the case must be remanded to state court. *Id.*

██ Section 1447(e) does not state the factors to be considered when making a determination of whether joinder should be permitted or denied. However, district courts have considered the following factors:

1. whether the party sought to be joined is needed for just adjudication and would be joined under Fed. R.Civ.P. 19(a);
2. whether the statute of limitations would prevent the filing of a new action against the new defendant should the court deny joinder;
3. whether there has been unexplained delay in seeking the joinder;
4. whether the joinder is solely for the purpose of defeating federal jurisdiction;
5. whether the claim against the new party seems valid;
6. the possible prejudice that may result to any of the parties in the litigation;
7. the closeness of the relationship between the new and the old parties;
8. the effect of an amendment on the court's jurisdiction; and
9. the new party's notice of the pending action.

*Hardin v. Wal–Mart Stores, Inc.,* 813 F.Supp.2d 1167, 1173–74 (E.D.Cal.2011); *Oum v. Rite Aid Corp.,* No. CV08–7741–GHK, 2009 WL 151510, at *1 (C.D.Cal.

---

**21.** *Accord Petrosyan v. AMCO Ins. Co.,* No. CV12–06876–SJO, 2013 WL 3989234, at *4 (C.D.Cal. Aug. 2, 2013); *Aqua Connect, Inc. v. Code Rebel, LLC,* No. CV11–5764, 2012 WL

1535769, at *1 (C.D.Cal. Apr. 27, 2012); *Vincenti v. Exxon Mobil Corp.,* No. CV11–7336–CAS, 2011 WL 5827955, at *1 (C.D.Cal. Nov. 16, 2011).

Jan. 20, 2009). The consideration of these factors in connection with a motion for leave to amend is only for the purposes of making that determination. A denial of joinder under § 1447(e) does not necessarily constitute a final determination of the viability of a particular claim. Thus, it does not necessarily preclude a plaintiff from bringing a separate action against a non-diverse defendant in state court. *See Newcombe*, 157 F.3d at 691 (district court did not abuse discretion by finding no prejudice to plaintiff because a parallel action against the non-diverse defendant could be brought in state court).

### 2. *Application*

An analysis of the first six factors is sufficient to inform an exercise of discretion with respect to the Motion.

#### a) Whether the Claims against Shane Appear Valid

#### (1) *Conversion Claim*

#### (a) Legal Standards

■ To state a claim of conversion, a plaintiff must allege facts supporting an inference that: (1) the plaintiff owns or has a right of personal possession to the personal property; (2) the defendants' disposition of the property is in a manner "that is inconsistent with the plaintiff's property rights"; and (3) plaintiff sustained damages as a result. *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App.4th 97, 119, 55 Cal.Rptr.3d 621 (2007). Plaintiff must have a claim of ownership at the time of the alleged conversion. *Baldwin v. Marina City Properties, Inc.*, 79 Cal.App.3d 393, 410, 145 Cal.Rptr. 406 (1978) (sustaining a demurrer because plaintiff—owner of a security interest—did not adequately allege title or right to possession and damages). "A trust beneficiary has no legal title or ownership interest in the trust assets; his or her right to sue is ordinarily limited to the enforcement of

the trust, according to its terms." *Saks v. Damon Raike & Co.*, 7 Cal.App.4th 419, 427, 8 Cal.Rptr.2d 869 (1992).

■ The statute of limitations period for a claim of conversion is three years. *See* Cal.Code Civ. Proc. § 338(c)(1) (a claim must be brought within three years in an "action for taking, detaining, or injuring any goods or chattels, including actions for the specific recovery of personal property"); *see also AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 143 Cal.App.4th 631, 639, 49 Cal.Rptr.3d 493 (2006) (applying § 338(c)(1)). Time to file commences upon "the act of wrongfully taking property." *AmerUS*, 143 Cal.App.4th at 639, 49 Cal. Rptr.3d 493; *accord Bono v. Clark*, 103 Cal.App.4th 1409, 1433, 128 Cal.Rptr.2d 31 (2002).

#### (b) Application

■ Plaintiff argues that the SAC adequately pleads a claim of conversion against Shane. Plaintiff provides no support for this assertion other than that he is a beneficiary of the RSMS Trust because he is assumed to be the natural object of his parents' affection. This argument is unpersuasive.

The SAC does not allege that Plaintiff was ever named as a beneficiary of the Policy. It alleges that the RSMS Trust was the beneficiary of the Policy. As stated in *Saks,* a beneficiary has no legal title or ownership interest in trust assets. Further, the SAC contains no allegations as to how the assets of the RSMS Trust were to be distributed among its beneficiaries. Indeed, the SAC contains no allegations as to whether Morlitz, as trustee, was required to distribute RSMS Trust assets, or whether he had any discretion in doing so. Even if such allegations were included in the SAC, a claim of improper distribution must be made against the trustee. Thus, the only path by which Plaintiff could

claim a title to or a right of possession of any sales proceeds is if such title or right had been given to him by Morlitz. The SAC unequivocally alleges that such rights were not transferred to Plaintiff. This is the underlying basis for all of its claims, i.e., that no such rights or proceeds were given to Plaintiff. Accordingly, because Plaintiff had no right to the sales proceeds, the claim of conversion against Shane does not appear to be valid.

Furthermore, even if there were a valid conversion claim against Shane, it appears that it would be time barred. Thus, the statute of limitations period commenced no earlier than 2008, when the policy was sold, and no later than May 2009, when Plaintiff learned of the sale. There is a three-year limitations period. Cal.Code Civ. Proc. § 338(c)(1). It likely expired no later than May 2012. This action was brought after that date. Thus, it appears that a conversion claim against Shane—even if well-pled—would be time barred.[22]

### (2) *Money Had and Received Claim*

#### (a) Legal Standards

■ "A cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." *Gutierrez v. Girardi*, 194 Cal.App.4th 925, 937, 125 Cal.Rptr.3d 210 (2011) (internal quotation marks omitted). There must be an allegation that the defendant "has received money which belongs to [the plaintiff], and which in equity and good conscience should be paid over to the [the plaintiff]." *Id.* (internal quotation marks omitted); *accord Weiss v. Marcus*, 51 Cal.App.3d 590, 599, 124 Cal.Rptr. 297 (1975) (defendants owed

plaintiff a portion of settlement proceeds received "by virtue of his lien for the reasonable value of legal services rendered").

The limitations period for bringing a claim of money had and received is two years. *See* Cal.Code Civ. Proc. § 339(1) (two-year period for liabilities not founded on written instruments); *see also Warren v. Lawler*, 343 F.2d 351, 360 (9th Cir.1965) ("the theory of money had and received [is an] action on an implied contract" and is subject to the two-year statute of limitations period in Cal.Code Civ. Proc. § 339(1)).

#### (b) Application

■ AGL and AIG argue that the money had and received claim against Shane lacks the necessary allegations of its substantive elements. Plaintiff did not respond to this argument. The SAC contains no allegations that Shane incurred a debt to Plaintiff and received money that was for Plaintiff's benefit. Further, even if it did, once again, it appears that the limitations period expired before this action was commenced in February 2014. As noted, this potential claim would have accrued no earlier than 2008, when the Policy was sold, and no later than May 2009, when Plaintiff learned of its sale. Thus, the limitations period likely expired no later than May 2011, which was well before the present action was filed. Accordingly, this claim does not appear to be valid for purposes of assessing jurisdiction.

### (3) *Constructive and Resulting Trust Claims*

#### (a) Legal Standards

■ Cal. Civ.Code § 2224 provides that: "[o]ne who gains a thing by fraud,

---

**22.** This Order does not determine the merits of the conversion claim against Shane. Rather, as discussed above, the purpose of this analysis is to determine whether the claims appear to be valid for jurisdictional purposes.

Should Plaintiff bring an action in the Superior Court against Shane, its substantive validity and timeliness would remain issues as to which that court would make any final determination.

accident, mistake, undue influence, the violation of a trust, or other wrongful act is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Constructive trusts "are not based primarily on the intention of the parties but are forced on the conscience of the trustee by equitable construction and the operation of law" based on allegations of "fraud or wrongdoing." *Rankin v. Satir*, 75 Cal. App.2d 691, 694–95, 171 P.2d 78 (1946). The purpose of a constructive trust is "to prevent a person from taking advantage of his own wrongdoing." *Murphy v. T. Rowe Price Prime Reserve Fund, Inc.*, 8 F.3d 1420, 1422 (9th Cir.1993) (internal quotation marks omitted). One may be imposed "in practically any case where there is a wrongful acquisition or detention of property to which another is entitled." *Id.* (internal quotation marks omitted). To prevail on a constructive trust claim, the plaintiff must show that the defendant has been unjustly enriched. *Id.* at 1423.

 "A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest." *In re Estate of Yool*, 151 Cal.App.4th 867, 874, 60 Cal.Rptr.3d 526 (2007). There must be a "relationship between the resulting trustee and beneficiary" such that "one, in good faith, acquires property *belonging to another*. The law implies an obligation on the part of the one in whom title has vested to hold the property for the owner's benefit and eventually convey it to the owner." *Id.* (emphasis in original). "The trustee has no duties to perform, no trust to administer, and no purpose to pursue except the single purpose of holding or conveying the property according to the beneficiary's demands." *Id.* A classic case of a resulting trust is where one person finances the purchase of property that is then placed in

the name of another. *Id.* Under such circumstances, the party named as the owner becomes the trustee of a resulting trust whose corpus is the property and whose beneficiary is the person whom the financing party intended to be the owner. *Id.*

 The limitations period for bringing a claim for a resulting trust is four years. Cal.Code Civ. Proc. § 343; *In re Estate of Yool*, 151 Cal.App.4th at 875, 60 Cal. Rptr.3d 526. "The statute of limitations does not begin to run against a voluntary resulting trust in the absence of repudiation by the trustee, that is, until a demand has been made upon the trustee and the trustee refuses to account or convey." *In re Estate of Yool*, 151 Cal.App.4th at 875, 60 Cal.Rptr.3d 526.

### (b) Application

 AGL and AIG argue that the constructive trust and resulting trust claims against Shane are invalid because they lack adequate allegations. Plaintiff did not respond. As to the constructive trust claim, the SAC does not allege that Shane acquired his allegedly disproportionate share of the proceeds derived from the sale of the Policy through his own fraud or wrongdoing. Rather, the SAC alleges only that Shane accepted what Morlitz gave him as a beneficiary of the RSMS Trust. Further, the SAC does not allege that Plaintiff was ever entitled to any of these proceeds. Accordingly, the claim that a constructive trust should be imposed against Shane is not well pleaded, and appears to lack force.

 A similar analysis applies to the resulting trust claim. The SAC alleges that Shane is a beneficiary of the RSMS Trust. As such, he was an intended beneficiary of any RSMS Trust assets, including those that Morlitz allegedly distributed to him following the sale of the Policy. Further, there are no allegations that Morlitz asked

Shane to hold or otherwise maintain for Plaintiff's benefit, his claimed share of any distribution. Rather, the SAC alleges that Morlitz gave to Shane, for his own benefit, a disproportionate share of the proceeds from the sale of the Policy. These allegations do not support a claim for a resulting trust. Thus, for purposes of the present analysis, this claim appears to lack merit.

### (4) *Accounting Claim*

#### (a) Legal Standards

 "An accounting is an equitable proceeding which is proper where there is an unliquidated and unascertained amount owing that cannot be determined without an examination of the debts and credits on the books to determine what is due and owing." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal.App.4th 1105, 1136–37, 167 Cal.Rptr.3d 832 (2014). Because equitable principles govern, "plaintiff must show the legal remedy is inadequate." *Id.* at 1137, 167 Cal.Rptr.3d 832. Accounting is proper where "the books and records are so complicated that an action demanding a fixed sum is impracticable . . . ." *Id.* There must be "[s]ome underlying misconduct on the part of the defendant" to "invoke the right to this equitable remedy." *Id.*

#### (b) Application

 AGL and AIG argue that the accounting claim against Shane is substantively inadequate. Once again, Plaintiff did not respond. There are no allegations of affirmative wrongdoing by Shane. The SAC alleges only that he Shane accepted the funds that were distributed to him by the Trustee of the RSMS Trust. There is no further showing of the need for the application of this separate remedy, which is dependent on the merits of the related claims. Accordingly, this claim also lacks force, for purposes of the present analysis.

### b) Whether Shane Is a Necessary Party

#### (1) *Legal Standards*

 Fed.R.Civ.P. 19(a) provides that joinder is required if, in the absence of the person, "the court cannot accord complete relief among existing parties" or if that person "claims an interest relating to the subject of the action and is so situated" that proceeding without the person would "impair the person's ability to protect the interest" or would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." In sum, a party is necessary under Fed.R.Civ.P. 19(a) if a "failure to join will lead to separate and redundant actions." *Aqua Connect*, 2012 WL 1535769, at *2; *accord IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F.Supp.2d 1008, 1012 (N.D.Cal.2000).

 Joinder of a person is not required, however, if it would destroy subject matter jurisdiction under Fed.R.Civ.P. 19(a). *Lopez v. Gen. Motors Corp.*, 697 F.2d 1328, 1332 (9th Cir.1983); *IBC Aviation*, 125 F.Supp.2d at 1012. Moreover, joinder pursuant to § 1447(e) is not appropriate if the non-diverse defendant whose joinder is sought is only "tangentially related to the cause of action or would not prevent complete relief." *Id.* Further, under § 1447(e), a court has discretion to deny joinder of a party "whose identity was ascertainable and thus could have been named in the first complaint." *Boon v. Allstate Ins. Co.*, 229 F.Supp.2d 1016, 1023 (C.D.Cal.2002).

#### (2) *Application*

 Plaintiff argues that joinder of a beneficiary is appropriate. Thus, such a person is a necessary party when the interests of different trust beneficiaries are in conflict and the action is brought

against the trustee. In support of this position, Plaintiff cites *Buerki v. Lochner*, 570 So.2d 1061, 1063 (Fla.Dist.Ct.App. 1990).[23] He argues that joinder is necessary because there is a conflict between the interests of Plaintiff and Shane. Plaintiff argues that this conflict arises because, if Plaintiff were to succeed on his claims, Shane would have to disgorge the disproportionate share of the proceeds he received following the sale of the Policy to CNF.

Plaintiff's arguments are not persuasive. Plaintiff may obtain complete relief from Morlitz—the trustee of the RSMS Trust—should he prevail on his claim that trust assets were improperly distributed. Cal. Prob.Code §§ 16400,[24] 16420[25]; *see also e.g., McElroy v. McElroy*, 32 Cal.2d 828, 831, 198 P.2d 683 (1948) ("Ordinarily the

beneficiary of a trust may enforce his rights by proceeding either against the trust property or against the trustee personally."); *accord Van de Kamp v. Bank of Am. Nat'l Trust & Savings Assoc.*, 204 Cal.App.3d 819, 863, 251 Cal.Rptr. 530 (1988); *see also* 13 Witkin, Summary Trusts, § 124 (10th ed.2005). Accordingly, failing to join Shane to this action would not preclude Plaintiff from obtaining complete relief.[26]

Further, Plaintiff has not explained why he waited to bring claims against Shane until after this action was removed. The facts supporting the claims of conversion, money had and received and accounting against Shane arose from a transaction that occurred over six years ago. The SAC alleges that Plaintiff was aware that the Policy was being offered for sale as early as July

---

23. There, proceeds from the sale of a home owned by the settlor of a revocable trust with two beneficiaries were to be deposited into a trust. *Id.* at 1062. After selling the home, the settlor placed the proceeds from the sale into a money market account in the name of only one of the beneficiaries. *Id.* After the death of the settlor, the trustee sought declaratory relief regarding the status of the sale proceeds as trust assets and its obligations regarding those assets. *Id.* Both beneficiaries were named as defendants. *Id.* The beneficiary whose name was not on the money market account filed a cross-claim against the other beneficiary for a constructive trust of the sales proceeds. *Id.* at 1062–63. The trial court dismissed the cross-claim brought by the beneficiary finding that he lacked standing. *Id.* at 1063. The appellate court affirmed stating that a "claim must be brought by or on behalf of the real party in interest" and that "the legal title holder to the trust property [the trustee] would be the real party in interest to a suit brought to determine the trust's assets." *Id.*

24. Cal. Prob.Code § 16400 states: "A violation by the trustee of any duty that the trustee owes the beneficiary is a breach of trust."

25. Cal. Prob.Code § 16420 states: "(a) If a trustee commits a breach of trust, or threatens to commit a breach of trust, a beneficiary

or cotrustee of the trust may commence a proceeding for any of the following purposes that is appropriate: (1) To compel the trustee to perform the trustee's duties. (2) To enjoin the trustee from committing a breach of trust. (3) To compel the trustee to redress a breach of trust by payment of money or otherwise. (4) To appoint a receiver or temporary trustee to take possession of the trust property and administer the trust. (5) To remove the trustee. (6) Subject to Section 18100, to set aside acts of the trustee. (7) To reduce or deny compensation of the trustee. (8) Subject to Section 18100, to impose an equitable lien or a constructive trust on trust property. (9) Subject to Section 18100, to trace trust property that has been wrongfully disposed of and recover the property or its proceeds. (b) The provision of remedies for breach of trust in subdivision (a) does not prevent resort to any other appropriate remedy provided by statute or the common law."

26. Plaintiff argues that there is no showing that Morlitz is "inclin[ed]" to give him full relief. Opp., Dkt. 59 at 8. Morlitz's "intent" is not relevant; his potential legal obligation to do so in compliance with court orders is what matters.

2008. SAC ¶¶ 43–44. Plaintiff also alleges that Cohen told him that the Policy had been sold in May 2009. *Id.* ¶ 45.

Plaintiff argues that he only became aware of the facts supporting the claims brought against Shane through discovery in this action. However, Plaintiff has not identified the basis for this assertion. Thus, he has not explained what he first learned. Nor does he provide any persuasive explanation for his claimed failure to become aware of the facts underlying his claim against his brother long before bringing this action. Thus, the present record, which is comprised largely of Plaintiff's allegations, reflects that he was in a position to have determined in May 2009 that the present claims against Shane had accrued.

Because joinder of Shane is not necessary to afford Plaintiff the ability to obtain complete relief, because there has been an unexplained delay in bringing the asserted claims against him, and because these claims were presented after removal in what appears to be an effort to defeat diversity jurisdiction, this factor weighs against permitting joinder.[27]

### c) Whether a New Action Would Be Barred by the Applicable Statute of Limitations

#### (1) *Legal Standards*

■ When a claim is timely filed in state court and then removed, a finding that the statute of limitations would preclude the filing of a new, separate action against a party whose joinder has been denied in the federal proceeding, may warrant remand. *See Petrosyan,* 2013 WL 3989234, at *5. Remand is generally preferable to dismissal "when the statute of limitations on the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction over the

case." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 351–52, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (addressing whether a district court had discretion to remand when only state law claims remained).

#### (2) *Application*

The question here is not whether a timely filed claim would be precluded if the joinder of Shane is not permitted. The relevant statutes of limitations likely expired years before Plaintiff filed this action in the Superior Court. Thus, Plaintiff would be precluded from bringing his claim independent of the forum.

Accordingly, this factor does not weigh in favor of joinder.

### d) Whether There Has Been Unexplained Delay

#### (1) *Legal Standards*

■ To evaluate the timeliness factor, courts must do more than determine whether a motion was "filed within the period of time allotted by the district court in a Rule 16 scheduling order." *AmerisourceBergen Corp. v. Dialysist West, Inc.,* 465 F.3d 946, 953 (9th Cir.2006). Instead, courts must consider whether the "moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Id.* (quoting *Jackson v. Bank of Haw.,* 902 F.2d 1385, 1388 (9th Cir.1990)) (an "eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable").

#### (2) *Application*

■ Plaintiff has not explained the basis for his argument that he did not know, and with the exercise of reasonable diligence could not have known, of the basis for his claims against Shane, until October 23,

**27.** The diversity jurisdiction issue is addressed in Section III.A.2.e, *infra.*

2014, when he filed the SAC. Dkt. 53. As noted, Plaintiff argues that he did not learn of the basis for his claims until he received certain discovery in this action. Plaintiff also argues that he should not have been forced to anger his father or risk disinheritance by challenging the sale of the Policy to CNF and asserting that he should have received a portion of the proceeds.[28] These arguments are unpersuasive.

Plaintiff has provided no legal authority in support of his argument that his delay should be excused because he believed he risked angering his father and being disinherited. Further, implicit in this argument is an admission that Plaintiff was aware of facts that would have justified bringing suit as early as 2009. Thus, Plaintiff has not explained why he delayed five years before bringing this action against Shane. Accordingly, this factor weighs heavily against allowing joinder.

### e) Whether Joinder Is Solely for the Purpose of Defeating Jurisdiction

#### (1) *Legal Standards*

 Courts are to consider the motive of a plaintiff in joining a non-diverse party with "particular care" when "the presence of a new defendant will defeat the court's diversity jurisdiction and will require a remand to the state court." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1376 (9th Cir.1980)[29]; *accord Schur*

v. *L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759 (7th Cir.2009) (district courts should consider "the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction"); *see also Moore v. Manns*, 732 F.3d 454, 456 (5th Cir.2013) (district courts should consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction"); *Ryan ex rel. Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir.2001) (same); *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir.1999) (same); *Petrosyan*, 2013 WL 3989234, at *5; *Clinco v. Roberts*, 41 F.Supp.2d 1080, 1083 (C.D.Cal.1999). *But see IBC Aviation*, 125 F.Supp.2d at 1012 (the legislative history of § 1447(e) suggests that it was adopted to "undermine the doctrine employed by some courts that amendments which destroyed diversity were to be viewed with suspicion") (quoting *Trotman v. United Parcel Serv.*, No. CV96–1168, 1996 WL 428333, at *1 (N.D.Cal. July 16, 1996)). The issue is often framed in terms of whether the sole purpose of seeking to join the non-diverse defendant is to defeat diversity jurisdiction. *See, e.g., Negrete v. Meadowbrook Meat Co.*, No. CV11–1861, 2012 WL 254039, at *5 (C.D.Cal. Jan. 25, 2012); *Buttons v. Nat'l Broad. Co., Inc.*, 858 F.Supp. 1025, 1027 (C.D.Cal.1994).

#### (2) *Application*

 Plaintiff argues that his only purpose in adding Shane is to ensure that he can

---

**28.** Plaintiff cites *Tarke v. Bingham*, 123 Cal. 163, 166, 55 P. 759 (1898) and *Bernson v. Browning–Ferris Indus. of Cal.*, 7 Cal.4th 926, 930, 30 Cal.Rptr.2d 440, 873 P.2d 613 (1994) in support of this argument. *Tarke* concerned an action to reform and foreclose on a real estate mortgage based on discovery of a clerical error in the mortgage at issue. *Tarke*, 123 Cal. at 164–65, 55 P. 759. *Bernson* concerned a libel action brought against defendant authors that concealed their identities until after the statute of limitations period

expired. *Bernson*, 7 Cal.4th at 929–30, 30 Cal.Rptr.2d 440, 873 P.2d 613. Neither applies here.

**29.** *Desert Empire* was decided before 28 U.S.C. § 1447(e) was enacted. There, the Ninth Circuit reviewed a district court's decision to allow joinder of a non-diverse party after removal under the standards provided in Fed.R.Civ.P. 20. *Desert Empire*, 623 F.2d at 1373–74.

obtain complete relief. This argument is unpersuasive. The first paragraph of the SAC, which Plaintiff drafted, alleges that

> Plaintiff has identified one necessary party, SHANE M. MURPHY, who is a domiciliary and citizen of California. Plaintiff is informed and believes that the court consequently lacks diversity jurisdiction pursuant to 28 U.S.C. sections 1441(a) and 1447.

SAC ¶ 2.

The subsequent allegations against Shane consist of the conclusory statement that he received a disproportionate share of the proceeds from the sale of the Policy to CNF and that his tortious conduct created liability to Plaintiff. For the reasons explained above, Plaintiff can obtain complete relief as to his claims with asserting separate ones against Shane. Thus, by naming his brother—the only non-diverse defendant—after removal, Plaintiff has raised concerns as to whether the claims are valid, or instead asserted for the purpose of defeating diversity jurisdiction. Accordingly, this factor weighs substantially against joinder.

#### f) Possible Prejudice to Plaintiff

##### (1) *Legal Standards*

In determining whether a plaintiff would suffer prejudice, courts have considered whether denial of leave to amend would require parallel in state and federal court proceedings or would lead the plaintiff to forgo claims against the non-diverse defendants. *E.g., Khoshnood,* 2012 WL 751919, at *5; *Negrete,* 2012 WL 254039, at *9. Because none of the claims against Shane appears valid, there is no basis to conclude that Plaintiff would be prejudiced even if he could not pursue them in a separate action in a Superior Court. This Order does not make a final, substantive determination as to the viability of any claims asserted against Shane. Rather, under 28 U.S.C. § 1447(e), it addresses only whether the asserted claims against Shane appear to be valid. They do not. To avoid any prejudice, however, the effective date of this Order as to the denial of joinder shall be stayed for 14 days following its entry to permit Plaintiff to file a separate action against Shane in the Superior Court while his claims against Shane in this action remain pending. Finally, to the extent that Plaintiff brings such claims, the burden of parallel actions could be addressed by having one action proceed while the other is stayed. *See* Cal.Code Civ. Proc. §§ 404–404.9; Cal. Rules of Court 3.515, 3.520, 3.529; *see also Morris v. S. San Joaquin Irrigation Dist.,* 2 Cal.2d 492, 493, 41 P.2d 537 (1935); *Conrad v. West,* 98 Cal.App.2d 116, 118, 219 P.2d 477 (1950). Accordingly, Plaintiff will not be prejudiced, and this factor weighs heavily against allowing joinder.

##### 3. *Disposition*

For the reasons stated above, none of the six factors favors allowing joinder and five of the six weigh heavily against it. Most significant are the findings that none of the asserted claims against Shane appears valid and that the apparent reason for the proposed joinder is to add a party whose presence would defeat diversity jurisdiction. Accordingly, the joinder of Shane proposed through the SAC is denied, and he is **DISMISSED** as a Defendant from the SAC, without prejudice to Plaintiff seeking to renew these claims in the Superior Court. This element of this Order shall be stayed for 14 days from its entry to permit the filing of such an action while this one remains pending as to Shane.

#### B. Whether Plaintiff Has Stated a Claim against AGL and AIG

##### 1. *Legal Standards*

###### a) Fed.R.Civ.P. 8

Fed.R.Civ.P. 8(a), provides that a "pleading that states a claim for relief must

contain ... a short and plain statement of the claim showing that the pleader is entitled to relief ...." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.,* 550 U.S. at 555, 127 S.Ct. 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations and quotations omitted).

A party may move to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir.2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–338 (9th Cir.1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir.2008) (citing *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001)).

### b) Civil Conspiracy

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510–11, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994). A claim of conspiracy requires that "two or more persons agree to perform a wrongful act ...." *Wyatt v. Union Mortgage Co.,* 24 Cal.3d 773, 784, 157 Cal.Rptr. 392, 598 P.2d 45 (1979). By agreeing to a common plan or design to commit a tort, coconspirators "incur liability co-equal with the immediate tortfeasors" because they effectively adopt "the torts of other coconspirators within the ambit of the conspiracy." *Applied Equip. Corp.,* 7 Cal.4th at 511, 28 Cal. Rptr.2d 475, 869 P.2d 454. A "plaintiff is entitled to damages from those defendants who concurred in the tortious scheme with knowledge of its unlawful purpose." *Wyatt,* 24 Cal.3d at 785, 157 Cal.Rptr. 392, 598 P.2d 45.

"Standing alone, a conspiracy does no harm and engenders no tort liability." *Applied Equip. Corp.,* 7 Cal.4th at 511, 28 Cal.Rptr.2d 475, 869 P.2d 454. "A bare agreement among two or more persons to harm a third person cannot injure the latter unless and until acts are actually performed pursuant to the agreement." *Id.* (internal quotation marks omitted).

"The elements of a conspiracy claim are the formation and operation of the conspiracy and damage resulting to [a] plaintiff from an act or acts done in furtherance of the common design." *Applied Equip. Corp.,* 7 Cal.4th at 511, 28 Cal. Rptr.2d 475, 869 P.2d 454 (internal quotation marks omitted). Concurrence and knowledge "may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged con-

spirators, and other circumstances." *Id.* (internal quotation marks omitted). Both tacit consent and express approval are sufficient to establish concurrence and knowledge with a conspiracy. *Id.* "By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." *Id.*

The limitations period that applies to a conspiracy claim is the same as the one that applies to the underlying conduct that is purpose of the alleged conspiracy. *See Wyatt,* 24 Cal.3d at 786, 157 Cal.Rptr. 392, 598 P.2d 45 (applying the statute of limitations period for the underlying tort of fraud). The time does not begin to accrue until the "last overt act" of the conspiracy has been completed. *Id.*

### 2. *Application*

#### a) Conspiracy Claims

Plaintiff alleges that AGL and AIG were co-conspirators in connection with the alleged conduct that provides the basis for the claims of breach of fiduciary duty, conversion, money had and received and tortious interference with an expected right to receive funds. The allegations of a conspiracy in the SAC are conclusory. The following excerpts are illustrative:

- AGL, AIG and others "acting as conspirators, commenced to complete and did complete sale of the insurance policy … and to pay, disburse and conceal the proceeds of sale and the beneficiary entitlements therein so as to deprive plaintiff of his share." SAC ¶ 46.
- AGL, AIG and others "acting as conspirators, communicated between themselves and others; executed docu-

ments as required; negotiated modes of payment as required; and refused upon legal demand to furnish information about their misconduct to plaintiff, so as to conceal their wrongdoing and continue their conspiracy to deprive plaintiff of his entitlements." *Id.* ¶ 48.

These same conclusory allegations are repeated throughout the SAC. There are no allegations concerning when or where such a conspiracy was conceived. There are no allegations concerning who—as a representative for AGL and/or AIG—conceived of, entered into or carried out the conspiracy. Further, the only alleged conduct of AGL or AIG that relates to the establishment of the conspiracy or the efforts to effect its alleged goals was the issuance of a new policy after the sale of the Policy to CNF. *Id.* ¶ 46(a-b). According to the SAC, this was part of the plan conceived to deprive Plaintiff of his share of the proceeds from the sale of the Policy. However, there are no allegations that support even an inference that, prior to either the sale of the Policy or the distribution of the resulting proceeds, AGL and AIG agreed with Morlitz and the other defendants to deprive Plaintiff of benefits to which he may have been entitled with respect to the assets held by the RSMS Trust. Thus, the SAC does not sufficiently allege the formation of the conspiracy.

#### b) Accounting Claims

An accounting is an equitable remedy that requires a showing that legal remedies are inadequate and that there has been wrongful conduct. As noted, the SAC does not present allegations sufficient to support even the inference of wrongful conduct by AGL or AIG. Plaintiff argues that an accounting is necessary because some or all of the proceeds from the sale of the Policy to CNF were used to pay premiums that were in arrears.[30] Thus, he

---

**30.** This argument is not supported by the allegations of the SAC.

argues that it will be used to determine if any assets were distributed to any of his other siblings. If all of the $716,865 were used to pay past-due premiums, then no assets would have been distributed to any of Plaintiff's siblings. Thus, Plaintiff argues that accounting is necessary to determine if he is entitled to any relief.

This argument is inconsistent with Plaintiff's claim that he was denied the benefits of the distribution of the proceeds from the sale of the Policy. It also fails to support an inference that legal remedies are inadequate. Plaintiff has not explained why the amount of distributions and those to whom they were made could not be determined by an examination of documents during discovery. Further, as discussed above, Plaintiff has not stated any legal claim against AGL or AIG. Thus, he has alleged no wrongful conduct that would support a claim of accounting.

### 3. *Disposition*

Because the SAC does not contain sufficient allegations supporting any of the five claims brought against AIG or AGL, the Motion is **GRANTED.** In the original complaint and FAC, Plaintiff alleged a breach of contract claim against AGL; he brought that claim against AIG in the FAC. He has not included that claim in the SAC. Instead, Plaintiff relies on an inadequate conspiracy theory as the basis for the alleged liability of AIG and AGL. Notwithstanding this procedural history, the Court will allow Plaintiff a final opportunity to seek to assert meritorious claims against these parties. Once again, Plaintiff is reminded that he is subject to the requirements of Fed.R.Civ.P. 11 in connection with asserting any amended claims. Should it later be shown that in any amended pleading he did not comply with that longstanding rule, an award of sanctions could result.

### C. Joinder of Other Diverse Defendants

AGL and AIG argue that the claims against the other diverse defendants are invalid because there is no personal jurisdiction, the statute of limitations has passed and the SAC fails to state a claim against them. Because AGL and AIG lack standing to raise these arguments, they are not addressed.

### IV. *Conclusion*

For the reasons set forth in this Order, Shane Murphy is **DISMISSED** pursuant to 28 U.S.C. § 1447(e). The Motion is **GRANTED,** with leave to amend, as to defendants AGL and AIG. Further, Plaintiff has failed to identify DOES 1–100 or request an extension of time to do so as instructed by the Order on October 14, 2015. Dkt. 52 at 6. Accordingly, DOES 1–100 are **STRICKEN** from the pleadings. Any amended complaint shall be filed within 14 days of the entry of this Order. The pretrial and trial dates for this matter are set forth in a separate minute order.

**IT IS SO ORDERED.**